Matter of Mountainside Residential Care Ctr. (S.O.) (2025 NY Slip Op 25022)

[*1]

Matter of Mountainside Residential Care Ctr. (S.O.)

2025 NY Slip Op 25022

Decided on January 29, 2025

Supreme Court, Delaware County

Guy, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 29, 2025
Supreme Court, Delaware County

In the Matter of the Application for The Appointment of a Guardian By Mountainside Residential Care Center, Petitioner, 
 for S.O., a person alleged to be incapacitated

Index No. EF2024-808

Mental Hygiene Legal Service (3rd Dept.)
Alicia C. Rohan, Esq.
Oneonta Field Office
28 Hill Street, Ste 314
Oneonta, NY 13820
Court-Appointed Counsel for Respondent
Leilani J. Rodriguez, Esq.
Sholes Miller Rodriguez & Brown, PLLC
300 Westage Business Center Drive, Suite 390
Fishkill, NY 12524
Counsel for Petitioner

David H. Guy, J.

On October 2, 2024, Mountainside Residential Care Center (referred to herein as the "Facility") filed a petition pursuant to Article 81 of the Mental Hygiene Law, seeking the appointment of a guardian of the person and property of S. O., an alleged incapacitated person ("AIP"). The Court issued an order to show cause dated October 7, 2024, appointing Mental Hygiene Legal Service (3rd Dept.) as counsel to represent Mr. O. and scheduling the hearing in this matter for November 15, 2024. The hearing convened on that date at the Facility. Mental Hygiene Legal Service (3rd Dept.), Alicia C. Rohan, Esq. (hereinafter referred to as "court-appointed counsel"), of counsel, appeared on behalf of Mr. O.; Mr. O. appeared; and Leilani Rodriguez, Esq. (hereinafter referred to as "petitioner's counsel"), attorney for the petitioner, appeared on behalf of the petitioner. T. L. (Mr. O.'s wife), S. O., Jr. and C. O. (Mr. O.'s children) also appeared at the hearing. Patricia Martinez appeared as a Spanish-language interpreter for the [*2]proceeding, as needed; the vast majority of the proceeding was conducted in English, with the confirmed understanding of Mr. and Mrs. O. Their children are bilingual.
The Court met separately with court-appointed counsel and the AIP, and the AIP expressed his consent to the portion of the relief sought in the petition that relates to his obtaining a payment source for his stay at Petitioner's facility (Facility), specifically including having his children serve as co-guardians with authority to assist him to pursue public (i.e., Medicaid) benefits, should that be determined by the guardian, in consultation with Mr. O. and other family members, to be the appropriate course of action. In support of Petitioner's case, Heather Greene, licensed clinical social worker at the Facility, S. O., Jr., and C. O. testified. The AIP was admitted to the Facility from a hospital after suffering a stroke. He is an undocumented resident of the United States and has no health insurance or Medicaid coverage in place. He requires a payment source to ensure the continued provision of services and residency at the Facility. His family has expressed a desire for the AIP to be moved to a facility closer to where they live, in Ulster County.
Court-appointed counsel did not present any evidence on behalf of the AIP. At the conclusion of the hearing, the Court granted the petition based on Mr. O.'s consent and appointed C. O. and S. O., Jr. as co-guardians of the property of Mr. O., whom the Court adjudicated as a person in need of a guardian ("PING"). The main purpose for the implementation of this guardianship is to get the PING the assistance he needs to determine if he should pursue enrollment in Medicaid as a payment source for the cost of his continued care and residence at the Facility.
Petitioner's counsel was directed to draft and submit findings and an order consistent with the Court's decision. Petitioner's counsel submitted drafts to court-appointed counsel for her review. Counsel could not agree on the language regarding the authority to be granted to the co-guardians to interact with certain agencies of the federal government to allow the PING to obtain Medicaid coverage despite his status as an undocumented person. The Court provided deadlines for counsel to submit legal support for their respective proposed language for this power to be granted to the co-guardians. Petitioner's counsel filed a memorandum of law with supporting exhibits regarding her requested language for the appointment order, and court-appointed counsel filed a letter explaining her position regarding the requested language. The Court has also received and reviewed an email from court-appointed counsel dated December 10, 2024, with further arguments regarding the appropriate language for the proposed order.
Upon review and consideration of the petition, testimony, written summations, and controlling authority, the Court now issues this Decision.
Petitioner's counsel submits that the co-guardians should be granted the following authority in the appointment order:
Represent or arrange for representation for S. O. before the federal immigration authorities, to wit: United States Customs and Immigration Service (USCIS) and/or Immigration and Customs Enforcement (ICE) agency to adjust his immigration status, and the State and local health authorities, which will include but not be limited to seeking Permanent Residence Under Color of Law ("PRUCOL") status in order to qualify for Medicaid and other public benefits.
Petitioner's counsel argues this language is necessary to permit the guardians and immigration attorneys who will potentially represent the AIP to engage in communication with the necessary immigration authorities. In her memorandum, Petitioner's counsel explains that PRUCOL is defined as "an alien who is residing in the United States with the knowledge and permission or acquiescence of the Federal Immigration Agency and whose departure from the U.S. such agency does not contemplate enforcing." 18 NYCRR 360-3.2(j)(1)(ii). Undocumented New York residents who obtain PRUCOL status are entitled to full Medicaid coverage from New York State, including admission to subacute rehabilitation, and long-term support services in the community and/or nursing home care, if they meet all other eligibility criteria. Id. To qualify for PRUCOL status, proof is required to establish an immigration agency is not enforcing an individual's departure. Documentation Guide, Immigration Eligibility for Health Coverage in New York State, Category 3 (Persons who are Permanently Residing Under Color of Law [PRUCOL]).
Petitioner's counsel argues that due to his immigration status, Mr. O. needs to be classified as PRUCOL to obtain Medicaid benefits, which requires the guardians and counsel retained for this purpose to be permitted to communicate with immigration agencies. In support of this, petitioner's counsel included a letter from Lori A. LaSalle, Esq., who is a member of LaSalle & Dwyer, a law firm that works at the request of the Facility and/or their counsel to represent individuals who need to obtain PRUCOL status for Medicaid coverage. Ms. LaSalle's letter indicates she believes the likelihood of an individual being targeted for deportation as a result of a PRUCOL application is extremely low because New York guardianship records are not shared with USCIS or ICE and incapacitated and medically compromised individuals have not been a population targeted for deportation. She indicates that in her 30 years of experience practicing health law and guardianships, she has not had an incapacitated person deported as a result of a PRUCOL application. Her letter ultimately states that a legal guardian must have the authority to interface with USCIS and/or ICE and execute an authorization form. Her letter stops short of endorsing any specific language for inclusion in the appointment order.
Regarding the same authority for the guardians, court-appointed counsel submitted the following proposed language for the appointment order:
Assist S. O. in obtaining available health-care related benefits, including, but not limited to Medicaid benefits. This power shall include, but shall not be limited to: applying for (including the completion, execution, and submission of documents on behalf of S. O.), and, if deemed appropriate by the Co-Guardians, enlisting assistance from, appropriate persons or organizations, to aid in the risk/benefit analysis of, and application for, health insurance and/or long-term care insurance benefits, given the known needs and situation specific to S. O. and his current and future anticipated status. It is anticipated by the parties that given the current eligibility of S. O. for emergency Medicaid benefits only, this process will require the Co-Guardians to complete additional steps and execute additional documents on behalf of S. O., and powers related to the said additional steps and documents reasonably deemed necessary or appropriate by the Co-Guardians to facilitate the goal of gaining expanded/additional/different eligibility for benefits for S. O. are included with this section without need for further application to the Court.
Court-appointed counsel submits that there is "no evidence on the record to support the idea that the discussion regarding PRUCOL would apply to Mr. O." She also asks the Court to disregard Ms. LaSalle's letter as she is not a party or counsel of record in this matter. Court-appointed counsel submits that petitioner's counsel's proposed language is too general and not specifically tailored to the AIP's needs.
The Court disagrees with this assessment, based on the findings made at the hearing regarding the PING's currently unmet needs. At the hearing, it was established that the PING requires the assistance of a guardian to obtain a source of payment for his care and residency at the Facility. He does not have an agent under a power of attorney or healthcare proxy, or any other identified resource to address this need outside of the implementation of a guardianship. The PING indicated awareness of this need and consented to his children being appointed as guardians with the necessary authority to assist him in this limited way.
The co-guardians must have the authority to apply for benefits on behalf of the PING. Due to the PING's current status as an undocumented resident, he cannot directly apply for Medicaid, but must first obtain the proper legal status to be in a position to receive Medicaid benefits. The language proposed by petitioner's counsel allows for the co-guardians to exercise this authority to obtain benefits for the PING.
Arguably, the language of the "standard" power typically utilized by this and many courts to allow a guardian to apply for government benefits, including Medicaid, is sufficient to allow the guardians to do whatever is necessary to secure Medicaid or other governmental benefits for the PING:
Apply, negotiate, prosecute and settle actions, claims and arbitrations 
 for government entitlements and benefits of all kinds
 with any governmental administration or agency. Any settlement for the payment or receipt of more than $10,000 shall require the approval of the Court. (emphasis added).
The language proposed by count-appointed counsel should also be sufficient. Petitioner has satisfied the Court that certain specific language has proven to be effective and sufficient in situations like the PING is facing. Petitioner's language is more, not less, specific and clear than that proposed by court-appointed counsel.
This authority, like all authority granted to any guardian, is discretionary and not mandatory. The granting of authority by an appointing court does not compel a guardian to take or not take any particular action. The decision on whether or not to take certain action lies within the sound discretion of the guardian and is to be made with the utmost care, diligence, trust, loyalty and fidelity to the incapacitated person, affording him the greatest amount of self-determination and taking into consideration his personal wishes, preferences and desires. MHL §81.20(a).
Court-appointed counsel has expressed concern in this and similar recent matters regarding potential policy changes in the federal administration, which raises issues regarding enforcement against and deportation of non-documented persons. The Court agrees this is a reasonable and legitimate concern. However, giving the guardian the authority to pursue a particular course of action which would allow for provision of Medicaid benefits does not directly raise those issues. If the guardians decide, consistent with their responsibilities to and for [*3]the PING as enumerated above, that the risk associated with putting the PING in front of an immigration court or agency outweighs the risk of potential efforts by the facility to terminate his residence due to nonpayment, that decision can and will ultimately be made the guardians, within their discretion.
Court-appointed counsel appears to be concerned that the mere presence of certain language in the findings and order could put the PING at risk without any affirmative action by the guardians. This file has been sealed by order of the Court for good cause shown. The contents of it are not public, nor to be shared by those who do have access to them (counsel of record and the guardians) absent court order. The commission which will be issued to the guardians may be disclosed by them, to the extend they choose to exercise their powers and need to provide it as evidence of their authority. If the guardians decide to pursue a proceeding on behalf of the PING in an immigration court or agency, his status will necessarily be disclosed. That is a component part of the decision-making authority the PING has consented to the co-guardians being granted.
The Court's decision in this case is influenced by the fact that these co-guardians are the PING's family, selected by him to serve in the guardian role and make this and other decisions on his behalf. If the local department of social services were being appointed as guardian, and not on consent, as is or may be the case in other similar cases, the Court might come to a different conclusion. When a department of social services serves as guardian, there is always the potential for an inherent conflict of interest. As guardian the department may have to advocate for public benefits such as Medicaid for the AIP, at the same time it is the governmental agency tasked with dispersing and potentially denying those benefits. The local departments of social services regularly appointed by this Court in its judicial district have effectively navigated this potential conflict. The Court does not believe the potential conflict associated with the additional complication of immigration and citizenship status is an insurmountable issue for a department, though the facts of a particular case might motivate a different result.
Ultimately, the guardians in this matter need the authority, if they choose to exercise it, to specifically interact with and provide information to USCIS and/or ICE, as part of the established process for an undocumented person to potentially receive Medicaid benefits. If they do exercise it, the power should be clear enough to effectuate its intended purpose without return to the Court. Consistent with this decision, the Court will enter an appointment order and findings including the following authority granted to the guardians:
Represent or arrange for representation of S. O. before the federal immigration authorities, to wit: United States Customs and Immigration Service (USCIS) and/or Immigration and Customs Enforcement (ICE) agency to adjust his immigration status, and State and local health authorities, which will include but not be limited to seeking Permanent Residence Under Color of Law ("PRUCOL") status in order to qualify for Medicaid and other public benefits.
This decision constitutes the order of this Court. Separate order and findings will issue consistent with this decision.
Date: January 29, 2025
Hon. David H. Guy
Acting Supreme Court Justice